# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

LINDA VANDEUSEN,       )
                             )
           Plaintiff,    )   Civil Action No. 3:06-3281-CMC-BM
                             )
v.                         )
                             )   **REPORT AND RECOMMENDATION**
                             )
RIVERBANKS SOCIETY d/b/a   )
RIVERBANKS Zoo & GARDEN,   )
and/or RICHLAND-LEXINGTON  )
RIVERBANKS SPECIAL         )
PURPOSE DISTRICT d/b/a      )
Riverbanks Zoo & Gardens,    )
                             )
           Defendants.  )
_____)

This action has been filed by the Plaintiff[1] pursuant to the Americans with Disability Act, 42 U.S.C. § 12101, et. seq.; and the Rehabilitation Act of 1973, 28 U.S.C. § 791-794(C) (formerly §§ 502-508). Plaintiff alleges that a zoo operated by the Defendants is not in compliance with these Acts, and seeks injunctive relief. See Plaintiff's First Amended Complaint.

       The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 15, 2007. After having received an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on December 12, 2007, following which the Defendants filed a reply memorandum on January 16, 2008. Defendants' motion

---

[1]There were originally two Plaintiffs in this case. By stipulation of dismissal filed November 13, 2007, the organization Advocates for Disabled Americans (AFDA) was dismissed as a party Plaintiff.



is now before the Court for disposition.[2]

## Background and Evidence[3]

Plaintiff suffers from a neuro-muscular disease which requires her to use a wheelchair. Plaintiff asserts in her Complaint and in a certification attached to her memorandum in opposition to summary judgment[4] that she patronizes the Riverbanks Zoo & Gardens in Columbia, South Carolina, and that this Zoo "is not properly accessible to the Plaintiff and the disabled community." Plaintiff's First Amended Complaint, at ¶ 6. Plaintiff states in responses to Defendants' first set of continuing interrogatories[5] that she has been going to the Zoo two or three times a year since 1976, and that she has "been aware of the continuing ADA violations of the Zoo since its inception since 1992 when I was informed the ADA took effect." See Court Docket No. 18-2. In a verified

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[4]Defendants argue that some of the statements made by Plaintiff in this certification directly contradict her answers to interrogatories. To the extent this certification does indeed contradict previous evidence submitted by the Plaintiff in this case, that previous evidence will control for purposes of consideration of Defendants' motion for summary judgment. Cf. Bickenstaff v. Vassar College, 196 F.3d 435, 455 (2d cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous deposition testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior evidence].

[5]There have apparently been no depositions taken in this case. The only evidence presented for the Court's consideration are interrogatory responses of the parties, the previously mentioned "certification" from the Plaintiff, some affidavits from the Defendants, and some pamphlets and reports.



statement attached to Plaintiff's answers to Defendants' first set of continuing interrogatories, Plaintiff complains about the slope (apparently of the sidewalk) going to both the sea lion and "monkey tunnel" exhibits.  Plaintiff also complains that a rubber rug at the entrance to the gorilla exhibit makes it hard to open the door, that it is a "challenge" to get into the reptile house because the "doors are not easy to open at all," and that getting inside "the Farm...is a challenge because of a 'step' at the door."  Plaintiff also complains that it is difficult navigate the "bricks" in the rose garden, and that getting into the building to watch the Koalas is "impossible by myself. The hill is so steep and there are no rails to pull on. I always had to wait for help to get in that building." Plaintiff also complains about "cross slopes" around the exhibits and that it is hard to get up and down these "hills", that the tables at the "outdoor eating-place" are not accessible, and that none of the tables at the Zoo are accessible for people with wheelchairs. See Statement dated April 5, 2007. [Court Docket Nos. 16-3 and 18-2].  As part of her response to the Defendants' first set of continuing interrogatories, Plaintiff also states that "[b]esides the slopes, the bathrooms are not accessible." See Court Docket No. 16-3, at ¶ 3.

Palmer Krantz, Executive Director of the Riverbanks Zoo, attests that equal access to the activities, programs, and services of the Zoo has always been a major goal, that as Zoo facilities have developed over the years he and his staff have discussed access issues and concerns with architects and engineers, and that Plaintiff has never raised any access issues with anyone at the Riverbanks Zoo prior to filing this lawsuit.  Krantz attests that "many years ago" Plaintiff did submit a claim when a horse bit off a hand control on her wheelchair, and that the Zoo paid this claim. Plaintiff's husband also "years ago" submitted a claim for a minor hand injury, which the Zoo also paid.  Krantz attests that Plaintiff therefore knew the procedure for addressing any issue that might



have concerned her, and believes that she also knew how to contact him directly if she had any concerns.

Krantz attests that since the Zoo first opened in 1974, "thousands upon thousands of wheelchair users" have visited the Zoo without complaint or apparent access issues. Krantz attests that it is also his personal observation that many wheelchair users visit the Zoo every day with no apparent trouble accessing the Zoo's programs, services, and activities. Krantz attests that wheelchair users may use their own wheelchairs, or they can rent wheelchairs provided by the Zoo for that purpose, and that since the botanical garden opened in 1995 the Zoo has provided wheelchair accessible transportation between the Zoo and the Garden. Krantz attests that with respect to Plaintiff's allegation that she has visited the Zoo several times a year since 1976, that if she "visited that frequently during that length of time and had some access issue or concern, she [could] have mentioned it in a timely manner to someone at [the Zoo]....".

Krantz attests that, as noted in the history of Riverbanks Zoo and Garden (attached to his affidavit as Exhibit A), the Zoo opened in 1974 with a number of facilities that Plaintiff now claims need to be altered; that in the 1980s and 90s more facilities now at issue in this lawsuit were constructed, with no mention of any access concerns by the Plaintiff or anyone else; and that in 2002 a substantial fifteen million ($15,000,000) dollar project was completed, again with no mention of any access concerns by either the Plaintiff or anyone else. Krantz attests that all of the paving or surface issues Plaintiff raises in this lawsuit are from 2002 or earlier, and that by the time Plaintiff filed this lawsuit on November 20, 2006, it had been "well over a year since [the Zoo] had constructed any facility to which the public would have access." see Krantz Affidavit, with attached Exhibit.

4



## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (Proper Party Defendant)

The Riverbanks Zoo is owned and operated by the Riverbanks Park Commission through the Richland-Lexington Riverbanks Parks District, a South Carolina Special Purpose District. See S.C.Code Ann. § 51-13-10, et. seq.; see also Gould v. Barton, 181 S.E.2d 662 (S.C. 1971). Although not originally named as a Defendant, this entity is now named as a Defendant pursuant to the First Amended Complaint filed on January 30, 2008. The Riverbanks Society, which was the original named Defendant and which is a non-profit eleemosynary corporation established to provide private support for the Riverbanks Parks Commission, does not own or operate the Zoo and is therefore not a proper party Defendant in this case. See Jacobs Affidavit. Therefore, to the extent the Riverbanks Society is still listed in the caption of this lawsuit, it should be dismissed as a party Defendant.



## II.

### (Scope of Claims)

With respect to Plaintiff's claim against the remaining Defendant Richland-Lexington Riverbanks Special Purpose District, her claims are asserted pursuant to Title II of the ADA as well as under the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant does not dispute that it is a "public entity" for purposes of a Title II ADA claim. See 42 U.S.C. § 12131(1)(B). For purposes of summary judgment, the Defendant also does not dispute that the services it offers qualify as "services, programs or activities" for purposes of a Title II ADA claim. See also Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998) [finding that the phrase "services, programs, or activities" encompasses "virtually everything that a public entity does"].

The Rehabilitation Act imposes essentially the same requirements as the ADA. Levy v. Mote, 104 F.Supp.2d 538, 543 (D.Md. 2000); Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."]; Rogers v. Dept. of Health, Environmental Control,



174 F.3d 431, 433-434 (4th Cir. 1999); <u>see</u> <u>also</u> 29 U.S.C. § 794(a).[6] Therefore, while Plaintiff's claims are asserted under both the ADA and the Rehabilitation Act, for brevity's sake the undersigned generally refers to her claims as being "ADA claims" for purposes of this opinion.

### III.

### (Statute of Limitations)

Although subject to suit under the ADA and the Rehabilitation Act, Defendant argues that Plaintiff's claims are time barred as having been filed outside of the applicable statute of limitations. Specifically, Defendant argues that since Plaintiff has by her own admission been patronizing the Zoo since 1976 and has been aware of the "continuing ADA violations" since 1992 (shortly after the ADA took affect), and since no publicly accessible facility has been constructed at the Zoo for over a year prior to Plaintiff filing her lawsuit on November 20, 2006, that her claim for injunctive relief is time barred by the applicable one (1) year statute of limitations. <u>See</u> Court Docket No. 18-2; <u>Krantz Affidavit</u>, ¶ 8. Plaintiff argues in response that there is no one (1) year statute of limitations for her claim for injunctive relief, and that even if there is, the Defendant's conduct constitutes a "continuing violation" which begins running the statute of limitations anew each time she visits the Zoo and encounters ADA violations.

The question of whether a one year statute of limitations applies to claims such as are

---

[6]The Rehabilitation Act also provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States,...shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance....*" 29 U.S.C. § 794(a) [emphasis added]. No argument has been made by the Defendant for purposes of summary judgment that it is not subject to suit under the Rehabilitation Act because it does not receive federal financial assistance for purposes of Plaintiff's claim. Therefore, this issue has not been addressed by the undersigned in this Report and Recommendation.



being asserted by the Plaintiff here has already been adjudicated and decided by this Court in one of

Plaintiff's other cases.[7]  As stated in the Report and Recommendation filed in <u>Childers v. County of</u>

<u>York, South Carolina</u>, C/A No. 0:06-897, adopted as modified by order of the Court filed February

26, 2008:

> Neither the ADA nor the Rehabilitation Act contain a statute of limitations. However, pursuant to 42 U.S.C. § 12134(a), the Attorney General is empowered to promulgate regulations to effectuate the purposes of Title II of the ADA, and pursuant to this authority 28 C.F.R. § 35.170(b) has been promulgated requiring that a complaint under Title II against a public entity be filed within one hundred and eighty (180) days of the alleged discriminatory act. <u>White v. University of South Carolina</u>, No. 93-1293, 1996 WL 276540, at *2 (D.S.C. 1996).  As for the Rehabilitation Act, the most appropriate or analogous statute of limitations derived from the state law most applicable to this federal statute is to be used.  42 U.S.C. § 1988(a); <u>Wilson v. Garcia</u>, 471 U.S. 261, 268 (1985).
>
> Plaintiffs argue that South Carolina's general three year statute of limitations as contained in S.C.Code Ann. § 15-3-530(2) should apply to their Rehabilitation Act claims. The undersigned does not agree.  The South Carolina Human Affairs Law; S.C. Code Ann. § 1-13-10, <u>et.</u> <u>seq.</u>; which was passed by the South Carolina Legislature specifically to address claims of discrimination occurring in South Carolina, including discrimination based on disability, is the most analogous state statute to the federal statute at issue. *Cf.* <u>Moore v. Greenwood School District No.52</u>, 195 Fed.Appx. 140, 143 (4th Cir. 2006) [applying standards of the South Carolina Human Affairs Law to a case brought under Title IX]; <u>Wolsky v. Medical College of Hampton Roads</u>, 1 F.3d 222, 224 (4th Cir. 1993) [finding that one year statute of limitations provided by the Virginia Human Affairs Law was most analogous statute for claim brought under the Rehabilitation Act]. The South Carolina Human Affairs Law provides that a claimant may file a lawsuit within one year from the date of the violation alleged.    *See* S.C.Code Ann. §§ 1-13-90(d)(7) and (8), (e) and (f). Therefore, Plaintiffs had one year from the date of an alleged violation to file their claim under the Rehabilitation Act.

<u>Report & Recommendation</u>, at pp. 8-9.

This finding is entitled to preclusive effect in the case at bar. *See* <u>Aloe Creme Laboratories, Inc. v.</u>

<u>Francine</u> Co., 425 F.2d 1295 (5th Cir. 1970), where the United States Court of Appeals for the Fifth

---

[7]Plaintiff is a frequent filer of litigation in this Court.

8



Circuit commented:

> The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.

Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d at 1296.

Therefore, since this lawsuit was filed on November 20, 2006, under the applicable limitations periods Plaintiff's claims for relief under the Rehabilitation Act cannot extend to any alleged claim that arose prior to November 20, 2005, while any claim pursued under Title II of the ADA must be based on an alleged claim arising after May 24, 2006. Plaintiff states in her interrogatory responses that she patronizes the Zoo "two or three times a year" [Court Docket No. 18-2], that she went to the Zoo on September 2, 2006 and again in December 2006, and that she "always goes to the Festival of Lights during Christmas". [Court Docket No. 16-3, p. 2]. While Plaintiff does not provide any specifics with respect to what particular exhibits she visited on these occasions, or what particular barriers or other obstacles she encountered on these particular visits, she states in her certification dated January 12, 2007 (attached to Plaintiff's opposition to motion for summary judgment) that the cross slopes and running slopes of which she complains are "throughout the park". Therefore, at least to that extent, this evidence is sufficient for purposes of summary judgment to create a genuine issue of material fact as to whether Plaintiff was subjected to an alleged violation of the ADA and the Rehabilitation Act within the applicable time period. See Rule 56(c), Fed.R.Civ.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) [At summary judgment, the "evidence of the non-movant is to be believed, and all *justifiable inferences* are to be drawn in his favor"]. [emphasis added].

Defendant argues, however, that the violations asserted by the Plaintiff (if they exist) are the result of construction completed well over one (1) year prior to the filing of this lawsuit, that



9

Plaintiff (by her own admission) first experienced these violations more than one year prior to the filing of this lawsuit, and that her claims are therefore time barred whether she visited the Zoo within the applicable time periods or not. Plaintiff submits that this contention is without merit, since a "continuing violation" may be found for violations outside of a limitations period as long as there has been an actual violation experienced during the limitations period, particularly where only injunctive relief is being sought. *Cf.* Pickern v. Holiday Quality Foods, 293 F.3d 1133, 1137 (9th Cir. 2001) ["A plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period. But he or she has a cause of action, and is entitled to injunctive relief, for an injury that is occurring within the limitations period, as well as threatened future injury"]; see also Pickern v. Best Western Timber Lodge Marina Resort, No. 00-1637, 2002 WL 202442, at *5 (E.D.Cal. 2002) [finding that the statute of limitations began anew each time the plaintiff stayed in a motel and encountered ADA violations]. Under this theory, Plaintiff would be entitled to injunctive relief for any injury that occurred within the limitations period, as well as for threatened future injury. Pickern, 293 F.3d at 1137; see also Holt v. American City Diner, Inc., No. 05-1745, 2007 WL 1438489, at *7 (D.D.C. May 15, 2007) [Plaintiff asserting claim for injunctive relief under ADA can obtain such relief if they "can show a plausible intention or desire to return to the place of injury but for the barriers to access"]; *cf.* Roberts v. County of Nassau, 140 Fed.Appx. 277, 279 (2nd Cir. 2005) [summary judgment not appropriate where plaintiff asserts allegations stating claim that occurred within statute of limitations period].

Defendant counters Plaintiff's assertion by arguing that Plaintiff's claims fall not under the "continuing violation" theory, but under the "continuing effect" theory, which does not allow the continuing "effects" of a discriminatory act to constitute a new violation for purposes of



bringing a claim within an applicable statute of limitations.  *Cf.* Moseke v. Miller and Smith, Inc., 202 F.Supp.2d 492, 506-507 (E.D.Va. 2002) ["[I]t is clear that the continuing effects of a previous discriminatory act do not constitute a continuing violation"].  Defendant cites to two Fourth Circuit decisions as support for this argument: National Advertising Co. v. City of Raleigh, 947 F.2d 1158 (4th Cir. 1991); and Jersey Heights Neighborhood Association v. Glendening, 174 F.3d 180 (4th Cir. 1999).   In City of Raleigh, the difference between the  "continuing violation" theory and the "continuing effects" theory is described as follows:

> To establish a continuing violation...the Plaintiff must establish that the unconstitutional or illegal act was a...fixed and continuing practice.  The challenged action must be repeated within the statute of limitations period. [citations omitted]...A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation. [citations omitted].
>
> *                    *                    *
>
> [W]e have previously found a continuing violation where regulations continued to be applied to persons within the statutory limitations period.  Yet we have found no continuing violation where any harm to the plaintiff stemmed only from the initial application of a regulatory prohibition. [citations omitted].

City of Raleigh, 947 F.2d at 1166-1167.

The court in City of Raleigh found that no continuing unlawful acts had been shown just because the terms of an ordinance enacted years earlier were still in effect.  Rather, the court found that  the harm of which Plaintiff complained occurred upon enactment of the ordinance.  As an example, the court noted that the "continuing wrong" exception did not apply to municipal ordinances banning the installation of septic tanks on certain properties. Id, at 1167.  In Glendening, plaintiff's argument for a continuing violation rested on the alleged ongoing effects of an original decision (years earlier) to locate a highway in proximity to Jersey Heights.  While the plaintiff in Glendening may have continued to suffer the effects of that decision, the Court did not find that those



11

continuing effects amounted to "discrete acts of discrimination [falling] within the limitations period", and therefore disallowed the claim. <u>Glendening</u>, 174 F.3d at 189.

It is not clear, however, that <u>Glendening</u> and <u>City of Raleigh</u>, which involved results of ordinances or regulations enacted years earlier, necessarily apply to Plaintiff's claims, while Plaintiff cites to several previous rulings of this Court (in cases in which she was involved) finding that the continuing violation theory applies to claims of the type asserted here. <u>See</u> <u>Childers v. County of York</u>, C/A No. 0:06-897; <u>Vandeusen v. Adams</u>, 3:06-1092;[8] <u>cf.</u> <u>Virginia Hospital Ass'n v. Baliles</u>, 868 F.2d 653, 663 (4th Cir. 1989), <u>aff'd</u>, 110 S.Ct. 2510 (1989) ["[T]he limitations period cannot protect an allegedly unconstitutional program"]; <u>Deck v. City of Toledo</u>, 56 F.Supp.2d 886, 892-894 (N.D. Ohio 1999) [discussing differences between "continuing effects" theory and "continuing violations" theory] ; <u>Moseke</u>, 202 F.Supp.2d at 507-508; <u>Schonfeld v. City of Carlsbad</u>, 978 F.Supp. 1329, 1333 (S.D.Cal. 1997) [continuing inadequate access to City's curbs and sidewalks constitutes a continuing violation under the ADA]; <u>Pickern</u>, 293 F.3d at 1137 [Plaintiff has cause of action for injunctive relief for injury occurring within the limitations period, as well as for threatened future injury].

Hence, while the undersigned is sympathetic to Defendant's argument that Plaintiff has, in effect, slept on her rights by failing to bring this action until 2006; <u>see</u> <u>Glendening</u>, 174 F.3d at 189 ["A continuing wrong theory should not provide a means of relieving [a] plaintiff from its duty of reasonable diligence in pursuing its claims".], quoting <u>City of Raleigh</u>, 947 F.2d at 1168; an argument  Defendant also uses to support a laches defense to Plaintiff's claims; given the closeness

---

[8]Although this issue is addressed in the Report and Recommendation in <u>Vandeusen v. Adams</u>, it does not appear that the order adopting the Report and Recommendation makes a finding on this issue. <u>See</u> C/A No. 0:06-1092 (at Court Docket Nos. 47 and 65).



of this question, and since in any event an analysis of Plaintiff's claims reveals that they are subject to summary judgment on the merits; see discussion, infra; the undersigned does not find or recommend that summary judgment should be granted on this ground. Pickern, 2002 WL 202442, at *5; Holiday Quality Foods, 293 F.3d at 1137; see also Voices for Independence, et al. v. Penn. Dept. of Transportation, No. 06-78, 2007 WL 2905887, at * 16-17 (W.D.Pa. Sept. 28, 2007) [finding defense of laches inapplicable where claim brought within statute of limitations]; Transport Workers Union of America Local 100, AFL-CIO v. NY City Transit Authority, 341 F.Supp.2d 432, 453 (S.D.N.Y. 2004) [laches does not bar claim timely filed under statute of limitations]; Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 882, 906 (9th Cir. 2003) ["[L]aches does not bar future injunctive relief...[A]lmost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm"].

### IV.

### (Discrimination Claim)

In order for Plaintiff to establish her claim for disability discrimination under Title II of the ADA, she must prove 1) that she has a disability; 2) that she is otherwise qualified for the benefit in question; and 3) that she was excluded from the benefit due to discrimination solely on the basis of her disability. Levy v. Mote, 104 F.Supp.2d at 544, citing Doe v. University of Maryland Medical Systems Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). A "disability" means that the individual has a) a physical or mental impairment that substantially limits one or more one of the major life activities of the individual; b) a record of such an impairment; or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Defendant does not contest for purposes of summary judgment that Plaintiff has a



disability and that she is otherwise qualified for the benefit in question (i.e., access to the services, programs or activities at the Zoo). Defendant does contend, however, that Plaintiff has presented no evidence to show that she was excluded from any benefit due to discrimination solely on the basis of her disability. <u>Levy v. Mote</u>, 104 F.Supp.2d at 544; <u>see</u> 42 U.S.C. § 12132 [providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity..."]. After careful review and consideration of the arguments and exhibits presented, the undersigned is constrained to agree.

First, it is important to note that Plaintiff failed to comply with a previous order of this Court requiring her to provide more specific responses to discovery requests submitted by the Defendant. <u>See</u> Court Docket No. 23. Plaintiff's counsel does not dispute that Plaintiff did not provide any additional responses following entry of the Court's order granting Defendant's motion to compel, instead stating in Plaintiff's opposition memorandum that Plaintiff "informed Defendant that she would rely on Mr. Cody's report to document the specific barriers and what sections of the ADAAG[9] code that were violated. During our conversations Defendant's counsel seemed satisfied with the specifics of the violations." <u>Plaintiff's Memorandum in Opposition</u>, at p. 14. Therefore, for purposes of consideration of her claims, Plaintiff has only provided the general description of purported non-compliant structures at the Zoo as contained in the statement attached to her answers to Defendant's first set of continuing interrogatories, as well as the general statement that "bathrooms are not accessible". <u>See</u> Background and Evidence Section, <u>supra</u>.

The Cody report referred to by the Plaintiff is a report from Plaintiff's expert, William

---

[9]ADA Accessibility Standards.



B. Cody, M.ED., submitted on June 18, 2007, and consisting of a fifty-two (52) page comprehensive inspection report, with attached exhibits.  However, while Cody's report does address some of the problems generally discussed by the Plaintiff in her interrogatory responses and statement, it also addresses many additional matters or issues *not* referenced by the Plaintiff in her filings.  For purposes of this lawsuit, Plaintiff is bound by her *own* claims as set forth in her statement and interrogatory responses, and she may only pursue relief with respect to alleged violations that the evidence reflects she has actually encountered. Proctor v. Prince George's Hosp.Ctr., 32 F.Supp.2d 830, 832 (D.Md. 1998) [To have standing for injunctive relief, a plaintiff must demonstrate that he or she will suffer injury which is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"].

In her certification attached to her memorandum opposing summary judgment, Plaintiff includes the following statement:

> I have read Mr. Cody's report and adopt the report as the proper access.  In September 2006 I traveled to all the areas as documented by Mr. Cody with the obvious exception of the men's bathroom.  Violations as pointed out by Mr. Cody I have presently encountered and they have impaired my use of the park.

Certification of Linda Vandeusen, at ¶ 11.

Contrary to this statement, however, Plaintiff has made no allegations in this lawsuit whatsoever concerning the parking lot and parking spaces, the cabin meeting area, and other such matters addressed by Cody in his report.  Plaintiff cannot simply make a statement in her certification that she has encountered every violation found by Cody to exist at the Zoo for purposes of proceeding with her claims. Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1365 (S.D.Fla. 2001) ["Plaintiff's entry into the [facility] does not automatically confer upon him a presumption that he was injured by any and all architectural barriers therein"].  Further, although

15



Plaintiff did state in her interrogatory response that "the bathrooms are not accessible", Plaintiff has never been in the men's bathrooms at the Zoo and cannot therefore make a claim regarding these structures, even though Cody's report details alleged ADA violations in the men's bathrooms. Proctor, 32 F.Supp.2d at 832; see also Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir. 1998) [Plaintiff must have personally suffered an actual or threatened injury]; Warth v. Seldin, 422 U.S. 490, 499 (1975) [A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"]. Hence, any *other* potential ADA violations not discussed by Plaintiff in her statement and interrogatory responses, even if they are otherwise outlined by Cody in his Report and confirmed to exist, are not at issue in this lawsuit. Burke, 139 F.3d at 405; Access Now, Inc., 161 F.Supp.2d at 1364 ["Plaintiffs lack standing to complain about violations on behalf of all disabled individuals, as this would expand the standing doctrine beyond the limits of Article III."].

　　　　Turning to the particular claims Plaintiff *has* asserted, her reports of visits to the Zoo within the applicable time frame (one year and 180 days, respectively, of November 20, 2006) have been set forth in such a general and conclusory manner and are so lacking in specifics as to what she did on those particular visits, that the undersigned has only been able to find (giving Plaintiff every inference to which she may be entitled) that she (almost by necessity) encountered the walkway sloping problems described in her discovery responses and written statement. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980) [At summary judgment, the Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party]. Plaintiff has presented no evidence, however, concerning how long the specific walkways she has cited (those going to both the sea lion and "monkey tunnel" exhibits, as well as

16



around the Koala exhibit)[10] have been in place, whether they were part of the original construction of the Zoo from the early 1970s, or whether they were added after the enactment of the ADA. The age and dates on which these walkways were built is important, because the construction standards cited by Cody in his report for new construction do not apply to the Zoo's existing facilities.[11] See Torcasio v. Murray, 57 F.3d 1340, 1352, (4th Cir. 1995) [ADAAG guidelines apply only to "newly designed or newly constructed buildings and facilities and altered portions of existing buildings and facilities [and Defendant] was under no obligation to grant [Plaintiff's] proposed modifications, because [Plaintiff] has not alleged that [the structures at issue were] newly constructed, newly designed, or altered."]; Access Now, Inc., 161 F.Supp.2d at 1368 [Discussing applicability of ADAAG standards].

Further, a "public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance....". 28 C.F.R. § 35.150(b)(1).[12]

---

[10] While Plaintiff also generally complains about "cross slopes" around "the exhibits", the Court has no way of knowing what other exhibits (if any) Plaintiff is referring to, or where these slopes or cross slopes may be located. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

[11] Cody's report does state that the "Nature" on the Farm display has a ramp with a slope in excess of ADAAG Section 4.8.2., and which is "new construction done since my visit in September 2006" see Court Docket No. 26-2, at p. 40. It is unclear what the "Nature" is, although it appears from a picture in the report to be some type of covered seating area. However, Plaintiff's only complaint about "The Farm" in her statement and interrogatory responses is that "[g]etting inside the building is a challenge because of a "step" at the door". Nothing concerning a ramp or slope around the "Nature" is referenced anywhere in Plaintiff's allegations or statements.

[12] The Attorney General of the United States is given the authority to promulgate regulations implementing Title II, of which the above cited CFR is a part. See 42 U.S.C. § 12134(a). However, while these regulations include accessibility guidelines for new construction and alterations to existing facilities, they require relatively few changes to existing buildings or structures. Cf. Coalition of Montana's Concerned with Disabilities v. Gallatin Airport Auth., 957 F.Supp. 1166, 1168 (D.Mont. 1997).



<u>Coalition of Montanans Concerned with Disabilities v. Gallatin Airport Authority</u>, 957 F.Supp. at 1168 [The regulations implementing Title II do not generally require substantial changes to existing buildings or structures.]. With respect to existing buildings or structures, public entities are required to operate the programs, services and activities at issue in such a manner that, when viewed in their entirety, they are readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150(a); see <u>Pascuitti v. New York Yankees, et al.</u>, 87 F.Supp.2d 221, 223 (S.D.N.Y. 1999). In this regard, Palmer Krantz attests in his affidavit that

> Since opening in 1974, thousands upon thousand of wheelchair users have visited Riverbanks Zoo & Garden without complaint or apparent access issue. My office is located on the grounds of Riverbanks Zoo & Garden, and I regularly observe activities at Riverbanks. It is my personal observation that there are many wheelchair users visiting Riverbanks everyday with no apparent trouble accessing our programs, services, and activities. Many arrive in their own wheelchairs. Others rent wheelchairs provided by Riverbanks for that purpose. Since the Riverbanks Botanical Garden opened in 1995, Riverbanks has provided wheelchair-accessible transportation between the Zoo and Garden.

<u>See</u> <u>Krantz Affidavit</u>, ¶ 5.

Plaintiff has provided no evidence whatsoever to dispute this statement, and Krantz also notes that Plaintiff concedes that she is herself a regular visitor to the Zoo, and has been for decades without ever having filed a complaint about access issues or potential ADA violations.[13] <u>See</u> <u>Watson v. City of Mason</u>, No. 1-04-283, 2005 WL 3018690, at *5 (S.D.Ohio November 9, 2005) [Title II ADA

---

[13]Plaintiff states in her affidavit (¶ 8) that she wrote a letter in 2006 about ADA violations; however, in her response to the Defendant's interrogatories, when Plaintiff was asked to identify each employee or former employee of the Defendant who was consulted or contacted with regard to the allegations in this lawsuit, and to indicate the date and substance of the communication, Plaintiff responded only that the Defendant "received a summons and complaint and still violates my rights and denies all allegations." <u>See</u> <u>Plaintiff's Answers to Defendant's First Set of Continuing Interrogatories</u>, at ¶ 4 (Court Docket No. 16-3). The undersigned has previously noted that Plaintiff cannot create an issue of fact by offering contradictory statements. <u>Kennedy</u>, 952 F2d at 266 [party cannot create issue of fact by contradicting prior evidence].



claim dismissed where plaintiff did not make the need for an accommodation clear to the defendant before filing her lawsuit].

The undersigned can discern no basis in the scant evidence submitted to this Court on which to find that a genuine issue of fact exists as to whether the programs, services and activities at issue, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities. This finding also extends past just the walkway slope issue, to include Plaintiff's other complaints about the doors not being easy to open at the reptile house and at the entrance to the gorilla exhibit, the ability of disabled persons to access "the Farm" or the rose garden, and with respect to the dining facilities at the Zoo (even assuming for purposes for summary judgment that these other claims are not otherwise barred by the applicable statute of limitations - see Pickern, 293 F.3d at 1137 [injunctive relief can be sought for threatened future injury from barriers Plaintiff knows to exist]). As noted, Krantz attests in his affidavit that "thousands upon thousands" of wheelchair users have visited the Zoo and Garden without complaint or apparent access issues since 1974, including the Plaintiff (until she filed this lawsuit). Plaintiff has presented no evidence to the contrary,[14] and therefore even assuming Cody has identified potential problems with some of the facilities cited by the Plaintiff in his report, there is no basis for a finding by this Court that a genuine issue exists with respect to whether the programs, services and activities at issue, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities. *Cf.* Access Now,

---

[14]For example, Plaintiff alleges that it is difficult for her to navigate the "bricks" in the rose garden. No other specifics to support this general statement are provided; however, Krantz specifically attests in his affidavit that the Zoo provides wheelchair accessible transportation between the Zoo and the Garden, and Plaintiff has provided no evidence to dispute this assertion or to further clarify this claim. For his part, Cody doesn't even mention anything in his report about the bricks in the rose garden being an ADA violation.



*Inc.*, 161 F.Supp.2d at 1369 [Injunctive relief not appropriate for <u>de minimis</u> violations that "do not materially impair the use of an area for its intended purpose,...[or] pose any apparent danger to persons with disabilities"], citing <u>Parr v. L&L Drive-Inn Restaurant</u>, 96 F.Supp.2d 1065, 1086, n. 26 (D. Haw. 2000). [15]

Finally, while a public entity is required to give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate, it is not required to fundamentally alter the nature of the service or program or endure any "undue financial and administrative burden". 28 C.F.R. § 35.150(a)(3); 28 C.F.R. § 35.150(b)(1); <u>see also</u> <u>Kinney v. Yerusalim</u>, 812 F.Supp. 547, 548 (E.D.Pa. 1993); <u>Levy v. Mote</u>, 104 F.Supp.2d at 546-547. While Krantz attests that the Zoo is responding to many of the issues raised in this lawsuit; <u>see</u> n. 15, <u>supra</u>, tearing up and re-paving the series of walkways that traverse the Zoo

---

[15]Krantz also attests in his affidavit that, based on Cody's preliminary report, the Zoo "promptly" began addressing some of Cody's suggested changes with in house resources, discretionary funds from the current budget, as well as through a budget request for the forth coming year. Krantz cites, as examples, that the Zoo's facilities director ordered ADA-compliant drain grates to replace those that might present a challenge to wheelchair users (a problem noted by Cody in his report), that the Zoo has begun to install metal handrails at numerous locations suggested by Mr. Cody, as well as "numerous actions already completed and others underway." Krantz also attests that by the time Cody "returned for his subsequent inspection in May 2007, we had already addressed a number of his previous suggestions, and we have since addressed many more. To the extent that Mr. Cody has made specific and accurate suggestions that are reasonable, readily achievable, and not unduly burdensome, we intend to continue to address them as we are currently doing." <u>Krantz Affidavit</u>. Plaintiff has presented no evidence to dispute any of these statements and assertions by Krantz in his affidavit. <u>See</u> <u>Levy v. Mote</u>, 104 F.Supp.2d at 541 [Court granted summary judgment after finding, in part, that during the pendency of the lawsuit the Defendant had made attempts to renovate the subject property in order to make it compliant with the ADA]; <u>see also</u> <u>Access 4 All, Inc. v. Casa Marina Owner, LLC</u>, 458 F.Supp.2d 1359, 1365 (S.D.Fla. 2006) [motion to dismiss granted where "defendant's plans for ADA compliant renovations were already in effect prior to [p]laintiffs' filing their lawsuit, thus making it absolutely certain that any future ADA violations at the [facility] could not be reasonably expected to occur"]; <u>cf.</u> <u>Morrell v. Barter Foundation, Inc.</u>, 07-00003, 2007 WL 1412960 (W.D.Va. 2007).



grounds in order to address the sloping concerns cited by Cody in his report would apparently be a significant undertaking, even assuming only the figures cited by Cody in his report to be accurate.[16] Krantz also attests in his affidavit that most of the matters raised by Cody in his report relate to construction from "years ago", and that even with respect to more recent construction from the 1990s or 2000s (including a $15,000,000 "Zoo 2002" project completed in 2002), Plaintiff's failure to raise these issues at the time and/or before or contemporaneous with these projects now precludes the Zoo from seeking financial assistance from the architects and contractors responsible for the construction at the time, and would therefore create a financial burden for the Zoo. Plaintiff has not offered sufficient evidence with respect to this aspect of her requested relief to avoid summary judgment. Access Now, Inc., 161 F.Supp.2d at 1369 [It is the Plaintiff who must demonstrate that requested relief, including expense of obtaining relief, is justified].

### Conclusion

Based on the forgoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 16, 2008

_____

[16]Cody estimates the cost of correcting the improper sloping of the walkways to be anywhere from $40 to $80 per linear foot. However, no firm financial figures are provided as to what would be required to correct the alleged deficiencies cited by the Plaintiff.

21

