IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| LINDA VANDEUSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C/A No. 3:06-3281-CMC-BM |
| v. ) | |
| ) | **OPINION AND ORDER** |
| RIVERBANKS SOCIETY d/b/a Riverbanks Zoo ) | |
| & Gardens, and/or RICHLAND-LEXINGTON ) | |
| RIVERBANKS SPECIAL PURPOSE DISTRICT ) | |
| d/b/a Riverbanks Zoo & Gardens, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Through this action, Plaintiff seeks injunctive relief for alleged violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 28 U.S.C. §§ 791-94(C) (formerly §§ 502-508). The alleged violations relate to wheelchair accessibility at the Riverbanks Zoo and Gardens ("Zoo"). Plaintiff alleges that one or both Defendants, Riverbanks Society and the Richland-Lexington Riverbanks Special Purpose District, are responsible for these accessibility issues as owners and operators of the Zoo. She seeks to require Defendants to modify existing facilities to comply with the ADA and Rehabilitation Act.

The matter was referred to Magistrate Judge Bristow Marchant for pretrial proceedings pursuant to Local Civil Rule 73.02(B)(2)(g), DSC and as allowed by 28 U.S.C. § 636(b)(1)(A) & (B). The Magistrate Judge's pretrial management concluded with preparation of a Report and Recommendation ("Report") recommending that Defendants' motion for summary judgment be granted. Dkt. No. 71. The matter is now before this court on Plaintiff's objections to the Report.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**REPORT AND RECOMMENDATION**

The Report recommends that Defendant Riverbanks Society be dismissed as an improperly named Defendant because this entity does not own or operate the Riverbanks Zoo. The Report also recommends that summary judgment be granted to the more recently added (proper) Defendant, Richland-Lexington Riverbanks Special Purpose District. While the Report recommends that this court grant the motion in full as to this Defendant, it does not recommend that this court rely on all grounds argued in the motion. The grounds on which the Report relies are summarized below.[1]

**Statute of Limitations.** The Report recommends that summary judgment be granted in part based on application of the relevant statutes of limitations. Specifically, the Report recommends that

---

[1] Given the dismissal of the Riverbanks Society as an improperly named Defendant, the court will refer to "Defendant" in the singular in the remainder of this order. The grounds for summary judgment applicable to the remaining Defendant would, however, apply equally to the Riverbanks Society were it not dismissed on other grounds.

Defendant's motion be granted as to any claim for violation of Title II of the ADA which arose more than 180 days before Plaintiff filed this action. Under this recommendation, Plaintiff's ADA claims would be limited to those arising after May 24, 2006. The Report also recommends that the motion be granted as to any claim under the Rehabilitation Act which arose more than one year before this action was filed. Under this recommendation, Plaintiff's Rehabilitation Act claims would be limited to those arising on or after November 20, 2005.

Both recommendations are based, in part, on this court's adoption of similar recommendations in another action brought by Plaintiff (and others): *Childers v. County of York, South Carolina,* C/A No. 0:06-897. The Report opines that this determination has preclusive effect in the case at bar but does not rely solely on the preclusive effect of the order in *Childers*. Dkt. No. 71 at 8-9 (citing *Aloe Creme Laboratories, Inc. v. Francine Co.,* 425 F.2d 1295 (5th Cir. 1970)).[2]

The Report stops short of recommending dismissal of all claims based on timeliness despite Defendants' argument that the injuries alleged result, if at all, from the *continuing effect* of construction completed more than a year prior to any of the alleged injuries, and does not, therefore, constitute a *continuing violation* as argued by Plaintiff. Nonetheless, the Report acknowledges that this is a close question.[3]

---

[2] Neither party has objected to the Report's recommendation as it relates to the statute of limitations. This court, therefore, reviews this aspect of the Report for clear error. Having found no clear error, the court adopts the Report as to this recommendation. Even were this court to review this aspect of the report *de novo*, it would reach the same conclusion as did the Magistrate Judge, albeit without reliance on any preclusion doctrine.

[3] Defendant has not objected to the Report's failure to recommend dismissal of all claims based on application of the statute of limitations. This court will not, therefore, rule on this close question. The court does, however, suggest that whether Plaintiff's claims are precluded as merely the "continuing effect" of a prior violation or survive because they are a "continuing violation" may depend on the specifics of the claim. For example, if Plaintiff complains simply of Defendant's failure to incorporate a proper access ramp in new construction which was completed outside of the limitations period (at least assuming Plaintiff was also aware of the problem outside of the

3

**Discrimination Claim.** The Report concludes that Plaintiff has presented sufficient evidence to present a genuine issue of material fact as to the first two elements of her claim of discrimination: that she has a disability and that she is otherwise qualified for the benefits or services in question. These points were not challenged for purposes of summary judgment.

As to the third and final element, the Report concludes that Plaintiff has failed to present sufficient evidence that she was excluded from any offered benefits or services during any relevant period due to discrimination on the basis of her disability. This conclusion rests largely on consideration of the very general allegations set forth in the complaint and Plaintiff's failure to provide more than the most minimal specificity in discovery responses, even after an order compelling more detailed responses.

The Report rejects Plaintiff's attempt to enlarge the allegations of her complaint or to cure her failure to comply with an order compelling more specific discovery responses through "adoption" of the report of her expert. That expert made a preliminary examination of problems at the Zoo before suit was filed and completed a detailed inspection and report during the discovery period.

As to those specific allegations which the Magistrate Judge concluded were *both* contained in the complaint (as clarified by Plaintiff's discovery responses) and supported by a proffer of

---

limitations period), her complaint may arguably be barred because the absence of a proper ramp is merely a "continuing effect" of a prior violation of the ADA or Rehabilitation Act. If, on the other hand, Plaintiff complains that Defendant failed to provide an appropriate alternative means of access to its services (*e.g.,* assistance in negotiating the ramp when requested), then her complaint is of a failure which may be a new or "continuing violation." *See generally Ledbetter v. Goodyear Tire & Rubber Co., Inc.* 127 S. Ct. 2162, 2164 (2007) (addressing continuing violation theory in context of Title VII litigation and rejecting "paycheck accrual rule" where later lower paychecks are merely the continuing effect of a prior discrete employment action); *Holland v. Washington Homes, Inc.* 487 F.3d 208 (4th Cir. 2007) (stating in Title VII case that mere allegation that discriminatory action is part of an ongoing policy of discrimination cannot revive claim for time-barred discrete discriminatory action).

4

evidence (including the report of Plaintiff's expert to the extent it addressed matters properly identified as at issue through the complaint and discovery), the Report finds additional difficulties due to Plaintiff's failure to proffer specific evidence as to the difficulties she may have encountered during the relevant time frames.[4] The Report notes that Plaintiff's reports of her two visits to the Zoo within the relevant time frames were "set forth in such a general and conclusory manner and are so lacking in specifics as to what she did on those particular visits," that even giving Plaintiff the benefit of all possible inferences, the court could only infer that Plaintiff "encountered the walkway sloping problems described in her discovery responses and written statements." Dkt. No. 71 at 16.

As to the walkway slope problems, the Report notes that Plaintiff "presented no evidence . . . concerning how long the specific walkways she has cited . . . have been in place, whether they were part of the original construction of the Zoo from the early 1970's, or whether they were added after the enactment of the ADA." Dkt. No. 71 at 16-17. As the Report notes, "[t]he age and dates on which these walkways were built is important, because the construction standards cited [in the report of Plaintiff's expert] do not apply to the Zoo's existing facilities." *Id.* at 17. The Report also notes that Plaintiff proffered no evidence that she had ever sought and been denied any form of assistance or even alerted the Zoo to specific problems.[5]

---

[4] The relevant time frames are those noted in the unobjected-to recommendation relating to application of the statute of limitations.

[5] The Report declines to consider Plaintiff's averment (offered in opposition to summary judgment) that she wrote a letter in 2006 to a Zoo employee about ADA violations. As the Report explains, this averment is contrary to Plaintiff's earlier interrogatory response in which she referred only to her complaint in this action as notice of any ADA violations. The undersigned agrees that the later certification should not be considered because it is inconsistent with Plaintiff's earlier discovery responses. *See Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

Plaintiff's certification does not, in any event, reveal the specific concerns which may have been raised in the alleged letter. Any conclusion that the letter contained a specific complaint (or

5

Ultimately, the Report concludes that the "scant evidence submitted to this Court" is insufficient to present a genuine issue of material fact "as to whether the programs, services and activities at issue, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities." This conclusion relates not only to the walkways but to other access issues raised in the complaint.[6] The Report, therefore, recommends that Defendant's motion be granted based on the combined effect of application of the statute of limitations (limiting the period covered by the complaint) and Plaintiff's failure to proffer sufficiently specific evidence to allow a reasonable jury to find that Plaintiff encountered such difficulties during the relevant period or that the alleged difficulties resulted from an applicable requirement under the ADA or Rehabilitation Act. As noted above, the last determination requires proof of the date of construction of the offending structure or facility absent evidence that Defendant was given an opportunity to provide the service or benefit through alternative means.

---

request for accommodation relevant to the difficulties Plaintiff may have encountered during the relevant period) would, therefore, be purely speculative. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995) (noting that "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion"); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (holding that a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

Finally, the person to whom Plaintiff claims to have mailed the letter was associated only with the Riverbanks Society, which does not own or operate the Zoo. Thus, even if this letter was sent to and received by the claimed addressee (who denies receipt), it would not provide notice to the only properly named Defendant, the Richland-Lexington Riverbanks Special Purpose District. *See* Dkt. No. 63-3 (Shuping affidavit denying receipt and explaining his association with the Riverbanks Society).

[6] As discussed above, the walkway problems (slopes and cross-slopes) were the only area of concern which are arguably covered by the complaint as clarified by Plaintiff's discovery responses and the expert report *for which Plaintiff proffered evidence of actual use or attempted use during the relevant limitations period*.

6

**OBJECTIONS**

Plaintiff begins her objections by asserting that the "Magistrate Report completely misunderstood the Plaintiff's position," in that the Magistrate Judge apparently "concluded that the Plaintiff is making academic complaints about [ADA and Rehabilitation Act] violations at the Zoo that were so inconsequential that the Plaintiff never even bothered to complain before filing suit." Dkt. No. 80 at 1. Plaintiff then promises to "retrace and correct this misimpression." She proceeds to explain why slopes are a problem for her as well as the relevance of the ADA Architectural Guidelines ("ADAAG").[7]

Plaintiff delineates three specific points which she asserts demonstrate the Magistrate Judge's misunderstanding of the nature of her claim. First, she asserts that there is no legal requirement to make an informal complaint before filing suit. Dkt. No. 80 at 3. Second, she argues that the problems alleged do not involve "unknown law or small, technical violations" and that the "impairments to access in this case are obvious." *Id.* Third, she notes that "Defendant is a major government entity with massive resources." *Id.* at 4.

Plaintiff also provides a listing of eleven problem areas she identified in a narrative attachment to her discovery responses. *See* Dkt. No. 53, Exh. 2 (identifying various slope problems, hard to open doors (including one made difficult by placement of a rubber mat), one step barrier and the absence of wheelchair-accessible tables). This listing does not, however, indicate when Plaintiff

---

[7] Nothing in the Report suggests a finding contrary to Plaintiff's premise that slopes present challenges to individuals in wheelchairs or that these challenges may be ameliorated, at least in part, by handrails. Neither does the Report question the applicability of the ADAAG to *new* construction. The Report does, on the other hand, rely on Plaintiff's failure to present evidence sufficient for a jury to conclude that she encountered *specific problems during the relevant period* which were in violation of applicable law recognizing that the ADAAG requirements are subject to certain accomodation exceptions if the construction at issue was completed after the ADA became effective.

encountered any or all of these problems. Plaintiff also notes that she identified bathroom accessibility as a problem in her interrogatory responses on April 5, 2007, and disclosed that she intended to rely on the report of her expert, later giving an "adoptive admission" of the same. She concedes, nonetheless that "[i]n her answers to interrogatories [she] objected to Defendant's question in regard to what physical barriers [she had] encountered and [stated] that she would rely on [her] expert's report." *Id.* at 5.

Plaintiff follows these statements with seven legal arguments. These arguments are addressed individually in the discussion below.

**DISCUSSION**

**Background and Evidence.** The Report sets forth the background and evidence in this case in substantial detail. Dkt. No. 71 at 2-4. Plaintiff has not directed the court to any alleged errors in this aspect of the Report. The court, therefore, adopts the Report's Background and Evidence section.

**Proper Party Defendant.** Plaintiff does not object to the recommendation that the originally named Defendant, Riverbanks Society, be dismissed from this action as it neither owns nor operates the Riverbanks Zoo. This recommendation is, therefore, adopted by the undersigned and Defendant Riverbanks Society is dismissed with prejudice.

**Scope of Claims.** Plaintiff does not direct the court to any error in the Report's summary of the scope of her claims and related discussion of the applicable law. Dkt. No. 71 at 6-7. This section of the Report is, therefore, also adopted without objection.

**General Objection that Magistrate Judge Misunderstood Plaintiff's Position.** The majority of the argument made in Plaintiff's introduction relates to matters which are not in any real

dispute and are certainly not questioned by the Report: (1) that individuals in wheelchairs encounter difficulties negotiating steep slopes or steps; (2) that handrails may ameliorate accessibility problems relating to slopes; and (3) that the ADAAG sets standards relating to architectural barriers in new construction or when renovations are made to existing facilities.

In later argument, Plaintiff suggests the Report is in error in finding the ADAAG "irrelevant" as to existing facilities. This misconstrues the intent of the Report, which recognized that application of the ADAAG was subject to an exception for "existing facilities" when the public entity provides the underlying services or benefits through appropriate alternative means. *See* 28 C.F.R. § 35.150(b) (discussed *infra* at 10 & 15).

This allowance of delivery of services and benefits by alternative means as to existing facilities creates a distinction which is critical in this case given Plaintiff's limited proof as to the facilities she utilized during the relevant period and her failure to proffer any evidence that those facilities were "new" as opposed to "existing" facilities. As the Report notes, Plaintiff has failed to proffer sufficiently detailed evidence from which a jury could determine which specific facilities she used or sought to use during the relevant period, what problems she personally encountered in using those facilities, and when those specific facilities were constructed. Nonetheless, giving Plaintiff the benefit of all inferences, the Report concludes Plaintiff had presented at least some evidence that she used the walkways during the relevant time frame. Thus, she presumably encountered the problems with slopes and cross-slopes. The Report notes, nonetheless, that Plaintiff gave no evidence as to which particular walkways she used or the dates those walkways were constructed.

Plaintiff's failure to proffer evidence that the problems she encountered related to "new facilities" is of particular significance in light of her failure to advise Defendant of the problems prior

9

to suit. While notice may not be a prerequisite to suit, it is difficult to see how a public entity can be charged with failing to accommodate a need as allowed under Section 35.150(b) (for "existing facilities") when it is given no notice of the problem. As an example, if Plaintiff had difficulty opening a door, and had so advised Defendant, it is quite possible it would have provided someone to assist her with the door. Likewise, the difficulty with the mat and complained-of absence of handrails might have been remedied prior to suit had Defendant been given notice of Plaintiff's concerns.[8] In short, by failing to give notice of any of the alleged problems with the Zoo facilities, Plaintiff deprived Defendant of the opportunity to deliver its services and benefits through alternative means as allowed by the regulation governing "existing facilities." Thus, while Plaintiff may be correct in stating that there is no legal requirement for a presuit informal complaint, she is wrong in suggesting that her failure to draw her concerns to Defendant's attention are irrelevant.

Plaintiff's additional arguments that the problems alleged are neither small nor technical problems and that "Defendant is a major government entity with massive resources," likewise miss the mark. The Report does not suggest that Defendant is in overall compliance with the ADA and Rehabilitation Act or that it lacks the resources to achieve compliance. These points are never reached because of Plaintiff's failures to (1) give Defendant fair notice of the specifics of her claims (as now characterized), (2) proffer evidence that she personally experienced most of the now-asserted problems within the relevant time frame, (3) proffer evidence as to whether the facilities were new or existing (as to problems which it might be inferred she did encounter within the relevant time frame), and (4) proffer evidence that Defendant was given an opportunity to provide its benefits and

---

[8] Defendant, in fact, immediately began making some of the requested changes upon receipt of Plaintiff's expert's report. This was, necessarily, post-commencement of this litigation given that Plaintiff did not give pre-suit notice of these concerns.

services through alternative means as to any "existing" facility which was not otherwise in complaince with the ADA.[9]

**Plaintiff's Seven Enumerated Legal Arguments.**

**1. Discovery Responses.** In her first legal argument, Plaintiff asserts that "[a]s a factual matter plaintiff was extremely detailed in her discovery responses." This assertion is followed solely by a chart summarizing her expert's report. For reasons explained in the Magistrate Judge's Report, Plaintiff cannot rely on "adoption" of her expert's report of his inspection of Zoo facilities to modify or supplement the generic allegations in the complaint and her minimal discovery responses regarding the problems she personally encountered during the relevant period preceding suit. Even if not required by basic standing requirements (for Plaintiff must show that *she* suffered a deprivation during the relevant period, not that some other individual *might have* suffered a deprivation), it would be required in light of the Magistrate Judge's earlier order compelling more detailed discovery responses.

This action was filed on November 20, 2006. The complaint alleges that Plaintiff has been a patron of the Zoo "on numerous occasions" and states that the zoo "is not properly accessible." The complaint asserts, without further specificity, that the facilities are deficient for failing to provide: "proper disabled parking; access aisles for the disabled; access aisle routes to and from the

---

[9] In arguing that alternative delivery would be inadequate, Plaintiff presumes that the alternatives which might be offered would be in the nature of a being provided pictures of gorillas, rather than being given the opportunity to visit the gorilla exhibit. This ignores the very simple alternatives which might be provided and which would ultimately provide Plaintiff with virtually the same benefits and services. For example, Plaintiff might, upon request, be offered assistance in opening doors or negotiating steep slopes. Similarly, obstacles such as inappropriate drain grates might be removed and hand rails might be installed (as is now being done) in areas where slopes pose a difficulty or hazard.

facilities; signage for the disabled; bathroom facilities, and other services."

In her interrogatory responses, which were not supplemented despite an order compelling greater detail, Plaintiff stated that she goes to the Zoo "often" but disclosed only two specific visits: one on September 6, 2006 (with her expert) and one in December 2006, apparently to enjoy the Festival of Lights. Plaintiff response to interrogatory 2. The second of these visits post-dates filing of the complaint. In response to interrogatory 3, Plaintiff indicated that she has encountered problems with slopes and inaccessible bathrooms, but does not reveal the dates of visits when she has encountered those problems or the particular locations of the offending facilities. She did, however, list several specific cross-slope and slope problems in an attached statement. This statement also indicates at least two places where the doors are difficult to open and notes concerns relating to the absence of tables suitable for use by someone in a wheelchair. The attachment, like the interrogatory response, fails to disclose the dates on which Plaintiff encountered any specific problems.[10]

Plaintiff also stated in her interrogatory responses that she intended to rely on the preliminary report of her expert and "reserve[d] the right to amend as discovery progresses." See Dkt. No. 16-3. Plaintiff adopted the subsequently filed expert report by a sworn certification dated December 12, 2007 (after the close of discovery and in response to the summary judgment motion). The relevant language of the certification is as follows:

> I have read Mr. Cody's report and adopt the report as the proper access. In September 2006 I traveled to all the areas as documented by Mr. Cody with the

---

[10] The slope issues are assumed, for purposes of this order, to correspond to the "access aisle" concerns referenced in the complaint, although the complaint did not give any clue as to the nature of the problems with the access aisles. The bathroom concerns are also mentioned in the complaint. The deficiencies as to doors and tables are covered by the complaint, if at all, by the "other services" reference.

12

    obvious exception of the men's bathroom. The violations as pointed out by Mr.
    Cody I have presently encountered and they have impaired my use of the park.

Dkt. No. 53-3 ¶ 11.

    Even if submitted within the discovery period, Plaintiff's adoption of her expert's report would not establish that Plaintiff personally encountered difficulties with the referenced facilities during the relevant time frame preceding suit.[11] It is, instead, merely a generic adoption of the expert's statements of deficiencies which, at most, suggests Plaintiff observed each of these areas during a visit during the relevant time frame and has *at some time in the past* had her use of the Zoo impaired by the problems noted in the expert's report.[12]

    The Magistrate Judge found Plaintiff's discovery responses to be inadequate and ordered Plaintiff to supplement them. Dkt No. 23. Plaintiff neither appealed this order nor complied with its requirements. Thus, she failed to cure the deficiencies and cannot now complain that the order was in error.[13]

---

  [11] Plaintiff submitted her expert's certification in response to the motion for summary judgment. Dkt. No. 53-6 (dated December 12, 2007). Although this certification does not attach the expert's report(s), it does state that he went with Plaintiff to the Zoo on September 2, 2006, "to observe the problems that were present at the Zoo." He further states that he conducted an inspection on May 3, 2007.

  [12] This certification, which was signed well after the summary judgment motion was filed, refers to only two trips within the relevant period, both in September 2006. One of these was a visit with the expert. Although Plaintiff repeats her listing of areas with which she has encountered problems at some point in time, she does not indicate which, if any, of these problems were experienced during either of her September 2006 visits.

  [13] This court, in any event, agrees that Plaintiff's responses are inadequate and that the inadequacies have not been cured. Defendant was entitled to notice of the specific dates of Plaintiff's pre-suit visits to the Zoo and the specific problems she personally encountered on those visits. A general listing of slope and bathroom problems which Plaintiff has encountered in the past is not sufficient. Further, reliance on and "adoption" of an expert report cannot cure the deficiencies in Plaintiff's discovery responses both because it does not comply with the prior, unchallenged order compelling discovery and because it does not establish that the Plaintiff personally experienced problems due to the deficiencies noted by her expert.

The undersigned agrees that Plaintiff should be limited to proof relating to the problems which her discovery responses reveal she encountered during the relevant time frames. The undersigned also agrees that, giving Plaintiff the benefit of all inferences which might be drawn from her limited responses, one can only assume that she encountered some (albeit unspecified) difficulties negotiating slopes during the specified visits. Other problems referenced in Plaintiff's interrogatory answers and attached narrative provide no dates when the problems were encountered and will not, therefore, be considered.

Plaintiff was given clear and fair warning that the court considered her discovery responses inadequate. Her failure to cure the inadequacies, not an error by the Magistrate Judge, is the source of any limitation on her claims.

**2. Zoo Patronage.** Second, Plaintiff argues that the conclusion that "Defendant does not violate the ADA because Plaintiff is a patron of the Zoo is incorrect as a matter of law." This argument presumes, incorrectly, that the Report recommends summary judgment simply because Plaintiff has been able to use the Zoo despite its alleged deficiencies.

The Report makes no such recommendation. Neither does it make any finding as to whether the Zoo satisfies the relevant standards. Instead, the Report bases its recommendation on Plaintiff's failure to proffer sufficient evidence to support her claims.

**3. ADAAG Standards.** Third, Plaintiff argues that the Report errs in "holding that the ADAAG standards are not relevant." This court finds no such categorical holding in the Report. Instead, the Report recognizes that the ADAAG are not, alone, determinative where "existing facilities" are involved due to the operation of 28 C.F.R. § 35.150(b) which allows for alternative means of delivery of services and benefits.

Section 35.150(b), which Plaintiff quotes in her third argument, provides that, as to "existing facilities," a "public entity may comply with the requirements" of the code by various means including redesign, delivery of services at alternate sites, assignment of aides, "or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities." For reasons discussed above, Plaintiff has failed to show that she made her concerns known to Defendant. This effectively deprived Defendant of the opportunity to offer alternative means of delivery of its benefits and services which, in turn, precludes Plaintiff from arguing that Defendant failed to offer such alternative means of delivery.[14]

**4. Undue Burden.** In her fourth argument, Plaintiff asserts that Defendant failed to meet its burden of proof that it would cause an undue burden to make the Zoo accessible. This defense is, however, irrelevant given Plaintiff's failure to satisfy her initial burden of proof of any violation.

**5. Expert Report.** Plaintiff's entire fifth argument is as follows: "It is respectfully submitted that Plaintiff satisfied [her] burden of proof with [her expert's] detailed cost analysis." The court presumes that Plaintiff is referring to her expert's inclusion of projections as to the cost modifications he believes are necessary to bring Zoo facilities into compliance with current ADAAG standards. Even with this presumption, the point of this argument is unclear. In any event, for reasons stated in the Report and above, the expert's report was insufficient to fill gaps in Plaintiff's proof as to difficulties she may have encountered at the Zoo during the relevant time frames.

---

[14] Plaintiff avers that she normally visited the Zoo accompanied by an able-bodied friend. Presumably her decision to do so precluded the need to seek assistance from a Zoo employee. Plaintiff indicates that she would like to have been able to attend the Zoo on her own. She does not, however, indicate that she ever made this desire known to the Zoo together with an inquiry as to what assistance might be available if she chose to do so.

**6. New Construction.** In her sixth argument Plaintiff assets that the Zoo's "alterations were new construction and are clearly under the ADAAG." Plaintiff suggests that this conclusion is supported by affidavit testimony from Defendant's executive director that "parking and surfacing issues are from the 2000's" and his listing of a number of other improvements made not later than 2002. This mischaracterizes the executive director's testimony who stated only that "[a]ll of the paving and surface issues that [Plaintiff and her expert] have raised . . . are from 2002 *or earlier*." Krantz affid. (emphasis added). He also stated that a number of the facilities at issue were constructed in the "1980's and 1990's" and that there had been no construction within the year before suit was filed. This affidavit testimony does not, therefore, establish when any surface was completed, much less that any difficulties which Plaintiff may have encountered in September 2006 were the result of construction which should be treated as "new" under the ADA or Rehabilitation Act.

The expert's report is, in any event, relevant only to the extent it addresses problems which Plaintiff herself encountered during the relevant period. As discussed above, Plaintiff has only given fair notice and evidence relating to two visits during the relevant period, both in September 2006. She has not described specific problems encountered during those visits. Only by giving Plaintiff the benefit of every inference has the court concluded that she may have encountered problems with slopes during those visits. Thus, the only relevant portion of the expert report is that which discusses slopes.

**7. Incorporation of Summary Judgment Arguments.** Plaintiff's seventh argument seeks, "for the sake of brevity," to incorporate her memorandum in opposition to summary judgment into her objection memorandum. Such an argument may save time for the litigant but is wasteful of

judicial resources. Further, it ignores the standard applicable to consideration of objections to a Report and Recommendation. *See supra* at 2 ("Standard"). The court declines the invitation.

**CONCLUSION**

For the reasons set forth above, the court adopts the Report and Recommendation except to the limited extent referenced above (non-reliance on preclusion theory), dismisses Defendant Riverbanks Society with prejudice as an improperly named party, and grants the motion for summary judgment as to Defendant Richland-Lexington Riverbanks Special Purpose District.

IT IS SO ORDERED.

                                                S/ Cameron McGowan Currie
                                                CAMERON MCGOWAN CURRIE
                                                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 31, 2008